UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FAST ACCESS SPECIALTY THERAPEUTICS, LLC,

Plaintiff,

v.

UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, and UNITED HEALTHCARE INSURANCE COMPANY,

Defendants.

Case No.: 20cv1953 JM (AGS)

**ORDER ON MOTION TO DISMISS**

Defendants UnitedHealth Group, Inc., United HealthCare Services, Inc., and United Healthcare Insurance Company ("United") move to dismiss the First Amended Complaint (Doc. No. 13), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 17.) Plaintiff Fast Access Specialty Therapeutics, LLC ("Specialty" or "Specialty Pharmacy") opposes. (Doc. No. 20.) The motion has been fully briefed, including supplemental briefing, (Doc. Nos. 24, 25), and the court finds the motion suitable for submission without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the below reasons, the motion is **GRANTED**.

## I. BACKGROUND

As alleged in the First Amended Complaint ("FAC"), Specialty is an out-of-network pharmacy that sought preapproval from United to dispense self-infused medication to "Patient A," one of United's insureds. (FAC, ¶¶ 1-3.) United responded by issuing "preapproval letters" to Specialty. (¶ 3.) Based on these "authorizations" and "countless other oral and written communications and assurances" from United, Specialty dispensed $720,384.81 in medication to Patient A over the course of a year, and made 14 timely claims for reimbursement. (¶ 4.) United paid only one claim in the amount of $24,110.10. (¶ 12.) United denied the remainder of Specialty's claims because there were no medical records showing the medication was actually self-infused by Patient A. (¶¶ 5-6.) Specialty unsuccessfully appealed each denial to United. (¶¶ 98-101.) As a result, Specialty brings claims for: (1) breach of express contract; (2) breach of implied contract; (3) promissory estoppel; (4) unjust enrichment/quasi-contract; (5) quantum meruit; and (6) intentional interference with prospective economic relations or advantage. (Doc. No. 13.)

## II. LEGAL STANDARDS

In deciding a motion to dismiss a complaint under Rule 12(b)(6), the court must "take all allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must also draw all reasonable inferences in favor of the claimant. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In resolving the motion, the court does not weigh evidence, evaluate witness credibility, or consider the likelihood that a plaintiff will

prevail at trial. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim that is preempted by federal law fails to state a claim upon which relief can be granted under Rule 12(b)(6). *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (motion to dismiss based on ERISA preemption is a merits decision on the pleadings, not a motion to dismiss for lack of jurisdiction).

## III. DISCUSSION

United's alleged determination for refusing to reimburse Specialty is indeed troubling. Depriving Specialty of any opportunity to address the claimed inequity that could result from United's contention of categorical preemption of all claims seems harsh. Nonetheless, based on the applicable law and the posture of the case as presented to the court, including the particular allegations in Specialty's FAC, as well as the argument, or lack thereof, put forth by both parties, the court must find that Specialty's claims, as pled, are preempted.

### A. Waiver

Before reaching the merits of United's preemption argument, Specialty argues that UnitedHealth Group, Inc. and United Healthcare Services, Inc. "waived their defense that the causes of action are preempted by ERISA by not raising them in their motion to dismiss the original Complaint."[1] (Doc. No. 20 at 19.) Specialty initially brought claims against UnitedHealth Group, Inc. and United Healthcare Services for: (1) breach of contract; (2) unjust enrichment/quasi-contract; (3) promissory estoppel; (4) quantum meruit; and (5) tortious interference with contractual relations. (Doc. No. 1.) In response, United filed its first motion to dismiss under Rule 12(b)(6), arguing that Specialty's breach of contract and collateral estoppel claims failed because the verification of benefits was neither a

[1] Specialty also argues, in contradictory fashion, that United should have initially asserted the preemption defense given the repeated references to Patient A's health plan in the FAC, even though Specialty argues the plan was referenced merely for "background purposes." (Doc. No. 20 at 20.)

binding agreement nor a clear and unambiguous promise to pay. (Doc. No. 8.) United also moved for a more definite statement regarding the tortious interference claim. (*Id.*)

In response, Specialty amended its complaint by replacing its tortious interference with contractual relations claim with a claim for intentional interference with prospective economic relations or advantage. (Doc. No. 13-1 at 21.) Specialty also added a claim for breach of implied contract. (*Id.* at 20.) In support of this claim, Specialty added some factual allegations regarding communications with United. (*Id.* at 14-16.) Specialty also added UnitedHealthcare Insurance Company as a Defendant. (*Id.* at 2.) In response, the three named Defendants filed a second motion to dismiss. (Doc. No. 17.) Again, United moved to dismiss Specialty's breach of contract and collateral estoppel claims. (*Id.*) This time, however, United moves to dismiss all claims on preemption grounds. (*Id.*)

In support of Specialty's argument that United waived its preemption defense by failing to raise it in its motion to dismiss the initial complaint, Specialty cites Rule 12(h)(1)(A), which provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)[.]" Rule 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) provides that "[f]ailure to state a claim upon which relief can be granted, . . . or to state a legal defense to a claim may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c) [for judgment on the pleadings]; or (C) at trial."[2]

A motion to dismiss based on federal preemption is properly characterized as one under Rule 12(b)(6). *See Stewart*, 297 F.3d at 957. United correctly argues that Rule 12(b)(6) motions are not subject to the waiver provision of Rule 12(h)(1)(A). The only defenses subject to waiver under Rule 12(h)(1)(A) are those listed in Rule 12(b)(2)-(5), i.e.

[2] Rule 12(h)(3) relates to motions for lack of subject matter jurisdiction.

lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process. United does not move to dismiss the case based on any of these defenses. Additionally, given that Specialty's preemption defense can still be raised in an answer, a motion for judgment on the pleadings, and at trial, it makes little sense to delay ruling on the issue because it was not raised in United's first motion to dismiss.[3] *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011) (invoking the "substantial amount" of caselaw allowing successive Rule 12(b)(6) motions where the motions have not been filed for the purpose of delay, where entertaining the motion would expedite the case, and where the motion would narrow the issues involved); *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM (AJWx), 2011 WL 1045555, at *5 (C.D. Cal. Mar. 14, 2011) (finding that a preemption defense can be raised anytime); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, No. 08CV1987-GPC (MDD), 2015 WL 5638104, at *20 (S.D. Cal. Sept. 24, 2015) ("[T]he legal standard to allow an affirmative defense of preemption is liberal."), *aff'd*, 709 F. App'x 440 (9th Cir. 2017). Regardless, in its FAC, Specialty added UnitedHealthcare Insurance Company as a defendant. (Doc. No. 13.) Therefore, the instant motion is the first opportunity UnitedHealthcare Insurance Company had to assert the preemption defense against Specialty. Accordingly, United's preemption argument was not waived by failing to raise it in its initial motion to dismiss.

**B. Preemption**

United moves to dismiss all of Specialty's claims on the grounds they are preempted under 29 U.S.C. § 1144(a), which is the "express" preemption provision of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. No. 17 at 7.) ERISA's express preemption provision "supersede[s] any and all State laws insofar as they . . . . relate to any

---

[3] Specialty does not dispute that United can raise the preemption issue later in the litigation. Specialty also provides no support for its implied argument that a preemption defense can be temporarily waived at the motion to dismiss stage. (*See* Doc. No. 25 at 9.)

employee benefit plan." 29 U.S.C. § 1144(a).[4] This includes state common law claims. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir. 1985).

The "relates to" standard is one of the "broadest preemption clauses ever enacted by Congress." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (noting that ERISA has "extraordinary pre-emptive power"). "Congress used the words 'relate to' in . . . . their broad sense." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96-97. Where "the existence of [an ERISA] plan is a critical factor in establishing liability" under a state cause of action, the state law claim is preempted. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136, 139-40 (1990). A claim "falls under ERISA's far-reaching preemption clause" when the "underlying theory of the case revolves around the denial of benefits." *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1131 n.2 (9th Cir. 1992). "While . . . . the phrase 'relate to' should be read broadly, the Supreme Court . . . . admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004) (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56 (1995)). "In evaluating whether a common law claim has 'reference to' a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival." *Id.* (citations omitted); *see also Golden Gate Rest. Ass'n v. City & County of San Francisco*, 546 F.3d 639, 657 (9th Cir. 2008) (a

---

[4] There are two kinds of ERISA preemption: express preemption, under 29 U.S.C. § 1144(a), and "complete" or "conflict" preemption, under 29 U.S.C. § 1132(a). *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)). Conflict preemption applies when a state law's enforcement mechanism conflicts with ERISA's "comprehensive scheme of civil remedies." *Id.* at 1225. United does not argue that Specialty's claims are preempted under ERISA's conflict preemption provision.

state law claim makes "reference to" an ERISA plan if (1) the claim acts immediately and exclusively on an ERISA plan or (2) adjudication of the claim requires the existence of an ERISA plan).

**1. Individual Claims**

United argues that all of Specialty's claims are preempted under the "reference to" prong of the preemption test because the claims "hinge on the interpretation" of Patient A's plan, and the claims are "based on the allegation that United 'had an obligation under the plan to provide health insurance coverage' to the insured." (Doc. No. 17 at 9-10.) United argues the claims are "masked" as claims under state law, but the action is "really to recover plan benefits." (*Id*. at 9.) In support of this argument, United points out that: (1) the FAC directly references the plan nine times, and indirectly references the plan twice; (2) the verifications attached to the FAC, i.e. the preapprovals, reference the plan 12 times; and (3) in at least two paragraphs of the FAC, Specialty admits the plan's limitations apply.[5] (Id. at 10.)

**a. Breach of Express Contract**

A breach of contract claim under California law requires: (1) a legally enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of that contract (e.g., by failing to perform or performing inadequately); and (4) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017). To be enforceable, "a contract must be sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (citation and

---

[5] Unfortunately, United does not address Specialty's claims on a claim-by-claim basis. *See Summit Est., Inc. v. Cigna Healthcare of Cal., Inc.*, Case No. 17-CV-03871-LHK, 2017 WL 4517111, at *5 (N.D. Cal. Oct. 10, 2017) (noting that the defendant made claim-specific arguments for dismissal). United also declined the court's invitation to do so in supplemental briefing. (*See* Doc. No. 23.)

internal quotations omitted). A plaintiff must "allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016) (internal quotation omitted). "[C]ourts in the Ninth Circuit have consistently held that ERISA preempts common-law contract claims arising from employee benefit plans." *Fonseca v. Hewlett-Packard Co.*, Case No.: 19cv1748-GPC-MSB, 2020 WL 4596758, at *17 (S.D. Cal. Aug. 11, 2020); *see also Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1444 (9th Cir. 1995) ("We recognize that ERISA generally preempts common law theories of contract law.").

Specialty alleges that "by issuing" the preapprovals to Specialty, and "through its other numerous written and oral communications . . . . and assurances," United "agreed to pay" Specialty for the medication. (FAC ¶ 137.) Specialty also alleges the preapprovals "represented an offer to enter into a contract with Specialty . . . . whereby United would pay Specialty" for the medication. (¶ 142.) Specialty alleges it accepted the offer by dispensing the medication set forth in the preapproval, and United then "breached its obligation to pay" for the medication. (¶¶ 143, 145.)

**i. Preapprovals**

Some courts have found that breach of contract claims, as well as other types of claims, are not preempted by ERISA if the plaintiff provider alleges that the defendant insurer or plan expressly promised to pay, or made representations to pay, as part of the verification of benefits process. *See Summit Est., Inc. v. United Healthcare Ins. Co.*, Case No. 4:19-cv-06724 YGR, 2020 WL 5436655, at *2 (N.D. Cal. Sept. 10, 2020) (breach of contract, promissory estoppel, and quantum meruit claims not preempted where the provider allegedly "contacted United to verify insurance benefits and was advised in all cases that the policies provided for and [United] would pay for treatment at the usual, reasonable and customary rate"); *In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, Case No. SACV 19-2075 JVS (DFMx), 2020 WL 5913855, at *5 (C.D. Cal. July 29, 2020) (breach of oral contract and promissory estoppel claims not preempted where the provider alleged "[a]s part of verifying benefits and authorizing

treatment . . . , and in multiple communications . . . , [United] orally promised to pay [the providers] for the treatment provided . . . . on the same terms as provided for in the policies between [United] and their insureds; specifically, payments . . . . equal to a percentage of their covered charges"); *Aton Ctr., Inc. v. Blue Cross of Cal.*, Case No.: 3:17-cv-00852-BEN-MDD, 2017 WL 6027077, at *1 (S.D. Cal. Dec. 5, 2017) (breach of oral contract claim not preempted where the provider alleged it was advised that "the policies provided for and [the insurer] would pay for inpatient treatment, based on the usual, reasonable and customary rate"); *Cigna*, 2017 WL 4517111, at *15 (claims for breach of contract and negligent failure to disclose were not preempted where the plaintiff "was advised in all cases that the policies provided for and [the insurer] would pay for treatment at the usual, reasonable and customary rate").[6]

Here, however, Specialty does not actually allege that United expressly agreed in the preapprovals to pay Specialty for the medication.[7] Rather, Specialty artfully alleges: (1) the "issuance" of the preapprovals constituted an "agree[ment] to pay, (FAC ¶ 137);" (2) the preapprovals "represented an offer to enter into a contract . . . . whereby United would

---

[6] In *Cigna*, however, the district court found the claims were not preempted under the "reference to" prong because California contract and tort law are laws of "general application" and do not focus exclusively or primarily upon ERISA plan administration, and because the existence of ERISA plans is not essential to their operation. 2017 WL 4517111, at *15 (citing *In re Anthem, Inc. Data Breach Litig.*, Case No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)).

[7] The documents Specialty calls "preapprovals" are not actually labeled as "preapprovals." United describes the documents as "verifications of coverage." The preapprovals, which are addressed to Patient A but copied to Specialty, nonetheless describe themselves as "approvals" and "benefit determinations." (Doc. No. 1-2 at 7.) Accordingly, when read in the light most favorable to Specialty, the preapprovals may have, as Specialty alleges, "specifically approved dispensing" Patient A's medication. (FAC ¶ 39.) As discussed herein, however, and based on the arguments put forth by the parties, the court cannot reasonably infer that an approval to dispense medication is necessarily a promise or offer to actually pay the pharmacy for the medication.

pay" for the medication, (¶ 142); and (3) "[n]othing in the preapprovals . . . . gave United the basis to withhold payment to [Specialty] for the claims," (¶ 139). (*See also* ¶ 1 ("United refused and continues to refuse to honor its series of preapprovals to pay[.]"). Specialty does not explain, however, and it is not apparent from the FAC, how the "issuance" of the preapprovals constituted an agreement, or how the preapprovals "represented" an offer. Further, it is not reasonable to infer the preapprovals are agreements or offers given that multiple courts have found that a verification of benefits does not, per se, constitute a contract without at least specifying the amount to be paid. *See Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017) (no implied contract based on preauthorization and statements that provider "would be paid" the customary rate without specifying the amount); *Aton Ctr., Inc. v. Premera Blue Cross*, Case No.: 3:20-cv-00501-WQH-BGS, 2021 WL 615048, at *4 (S.D. Cal. Feb. 16, 2021) (dismissing breach of oral and implied contract claims because "[verification of benefit] and authorization calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract"); *see also Regents of the Univ. of Cal. v. Aetna US Health of Cal., Inc.*, Case No. SACV 10-1043 DOC (RNBx), 2011 WL 13227844, at *4 (C.D. Cal. Mar. 15, 2011) (granting summary judgment for insurer because "[r]elevant case law establishes in cases with . . . . ambiguity regarding the facts that insurance authorizations or precertifications – when coupled with disclaimers – are not binding contracts"); *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) (granting summary judgment in favor of insurer based on expert testimony that, within the medical insurance industry, an insurer's verification is not the same as a promise to pay).[8]

///

///

[8] Specialty does not attempt to distinguish any of these cases, which are cited by United.

Furthermore, in the preapprovals, which are incorporated into the FAC,[9] United does not actually agree to pay Specialty for the medication. Rather, the preapprovals state "[w]e received a request to cover outpatient services" and "after review of the information submitted and your plan documents, it was determined the following service is eligible for outpatient coverage."[10] (Doc. No. 1-2 at 2.) Although the preapprovals confirm that Patient A was "eligible" for coverage, they explicitly state that payment was not guaranteed, and moreover, that payment was dependent on the terms of Patient A's plan with United. For example, the preapprovals state "[p]ayment is based on . . . . [t]he services the health plan covers" and "[t]his approval does not guarantee that the plan will pay for the service when, for example, . . . [p]ayment of covered services depends on other plan rules, including coordination of benefits." (Doc. No. 1-2 at 8.)

Finally, in addition to the multiple references to Patient A's plan contained in the preapprovals, Specialty itself repeatedly refers to Patient A's plan, both indirectly and directly, in support of its breach of express contract claim. Most notably, although Specialty apparently alleges the preapprovals constitute both an agreement and offer to pay, Specialty concedes the agreement to pay was "subject only to the limitations set forth in the [p]reapprovals," (¶ 137), and the offer to pay represented by the preapprovals was "subject to the conditions set forth therein," (¶ 142). The "conditions" and "limitations"

---

[9] Specialty states it inadvertently neglected to attach the exhibits attached to the initial complaint to the FAC. (*See* Doc. No. 19-1.) The same exhibits are referenced in the FAC, however. (*See, e.g.*, FAC ¶¶ 35-36.) Accordingly, the parties' Joint Stipulation to Allow Plaintiff to File Exhibits to First Amended Complaint (Doc. No. 19) is GRANTED. The exhibits at Doc. No. 19-1 are incorporated into the FAC.

[10] The preapprovals also list the procedure code, which is described as "Factor VIII (antihemophilic factor, recombinant) per IU, not otherwise specified." (Doc. No. 1-2 at 2.) The December 11, 2019 preapproval also lists "99999" as the total "requested units," and provides a date range from December 16, 2019 to January 31, 2020. (Doc. No. 1-2 at 7.)

set forth in the preapprovals are, of course, the conditions and limitations contained in Patient A's plan.

Specialty also directly references Patient A's plan by alleging: (1) United agreed to pay for Patient A's medication "subject only to the limitations of the Patient's plan;" (2) "[n]othing in the preapprovals or the Patient's plan gave United the basis to withhold payment to the Specialty Pharmacy for the claims;" (3) "Specialty Pharmacy provided the medication to the Patient consistent with and compliant with the preapprovals and the Patient's plan;" and (4) United issued the preapprovals "[k]nowing it had an obligation under the plan to provide health insurance coverage to Patient A for the medication." (¶¶ 138-141.) These references are not, as Specialty argues, merely for "background purposes." (*See* Doc. No. 20 at 10.) Rather, the repeated references to Patient A's plan in the preapprovals and in Specialty's allegations demonstrate that Specialty's breach of express contract claim is premised not only on the existence of Patient A's plan, but the specific terms in Patient A's plan, or lack thereof, concerning reimbursement to out-of-network pharmacies for self-infused medication. Accordingly, Specialty's breach of express contract claim is preempted to the extent it relies on the preapprovals. *See ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, Case No. SA CV 19-00243-DOC-DFM, 2020 WL 4760182, at *2 (C.D. Cal. July 29, 2020) (breach of contract claims preempted where provider plaintiffs treated the patients "only after receiving authorization and verification of benefits" because the claims were premised on the insurer's allegedly wrongful denial of benefits).[11]

**ii. Other Written and Oral Communications**

Specialty also alleges an express contract exists based on "other numerous written and oral communications . . . . and assurances." (FAC ¶ 137.) Although Specialty does

---

[11] The court in *ABC Services* also dismissed the breach of contract claims because the plaintiff providers "neglected to identify any contract provisions" to support its claims. 2020 WL 4760182, at *3.

not specify the written and oral communications and assurances upon which its express contract claim relies, in its introductory allegations,[12] Specialty lists some "additional communications" from United. (¶¶ 114-23.) Specifically, Specialty alleges that employees or agents of United said: (1) United still had not received Patient A's medical records, (¶ 114); (2) United received the medical records, but needed 30 calendar days for processing, (¶ 115); (3) the medical records were being reviewed, (¶ 116); (4) United needed more medical records, (¶ 117); (5) the claims were under review, (¶¶ 118-19); (6) the claims would be sent to be "expedited," (¶ 120); (7) "all unpaid claims should be finalized within a week," (¶ 121); and (8) Specialty should change the "POS" to Patient A's home and should follow-up with United in two weeks, (¶ 123).

Specialty also alleges in its introductory allegations that "United made a promise to out-of-network providers that it would pay them for approved out-of-network services based upon its published out-of-network payment policies." (¶ 110.) Although Specialty again does not specify the alleged promises to which it refers, Specialty also alleges that "United's website provides that when a patient has coverage for out-of-network benefits, it will pay for the lower of 'the out-of-network provider's actual charge billed to the member' or 'the reasonable and customary amount,' 'the usual customary, and reasonable amount,' 'the prevailing rate,' or other similar terms that base payment on what other healthcare professionals in a geographic area charge for their services." (¶ 105.) Specialty also alleges that "United's website further provides that it uses the FAIR Health databases to determine the reimbursement of out-of-network benefits and that it frequently uses the 80th percentile of the FAIR Health Benchmark Databases to calculate how much to pay for out-of-network services." (¶ 106.) Specialty alleges that "[r]ather than pay the Specialty Pharmacy based upon what other healthcare professionals in the geographic area

[12] Rather than specifying the written and oral communications upon which its express contract claim relies, Specialty merely incorporates all of its introductory allegations into its express contract claim.

charge for the medication, . . . United breached its own payment guidelines and its obligations under law by not paying[.]" (¶¶ 107-08.)

Here, however, Specialty does not allege or argue that either the "additional representations" made by United employees or agents, or the "published out-of-network payment policies" on United's website, constitute an express contract that is independent of the preapprovals. Rather, Specialty clearly alleges that it is the *combination* of these alleged communications with the preapprovals that serves as the basis for its breach of contract claims. (*See* Doc. No. 20 at 18 ("[T]he notices of preapproval that United issued to Specialty Pharmacy pursuant to United's provider policies and procedures, together with those policies and procedures and numerous additional written and oral assurances of payment from United, formed a binding agreement.").) In other words, Specialty does not allege or argue that its express contract claim could survive if the court finds, as it does, that the claim is preempted to the extent it relies on the preapprovals. For example, Specialty does not allege that United agreed to pay based exclusively on the representations made on United's website regardless of the preapprovals and regardless of the terms of Patient A's plan.[13] Because it is not reasonable to infer, based on Specialty's allegations,

[13] In its opposition, Specialty does not mention United's website, and references United's "published out-of-network policies" without specifying whether it is referring to the representations on the website. (*See* Doc. No. 20 at 9.) If Specialty amends the FAC to include an express contract claim that is not based on the preapprovals or Patient A's plan, the court makes no assurances that such a claim would survive. *See Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1029 (N.D. Cal. 2020) (claims for breach of contract and promissory estoppel preempted because, *inter alia*, the plaintiff alleged the insurer represented on its website that it would pay customary rates for "out-of-network *benefits*, which suggests the customary rate definition has a connection to the terms of benefit plans") (emphasis in original). Here, Specialty alleges that United agreed on its website that it would pay customary rates "when a patient has *coverage* for out-of-network *benefits*," and that United uses a database "to determine the reimbursement of out-of-network *benefits*." (FAC ¶¶ 105-06 (emphasis added).)

that Specialty's breach of express contract claim is independent of the preapprovals and Patient A's plan, the entirety of Specialty's breach of express contract claim is preempted.

**b. Breach of Implied Contract**

As an alternative to its breach of express contract claim, Specialty brings a claim for breach of an implied contract. (FAC ¶¶ 168-74.) "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). "The Ninth Circuit has held that ERISA preempts common law theories of breach of contract implied in fact[.]" *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985).

Specialty alleges that United's conduct manifested an intent to be bound because United: (1) "authorized" Specialty to dispense medication in the first preapproval; (2) "issu[ed]" two additional preapprovals; (3) paid one of Specialty's 14 claims (the eighth one); and (4) had "numerous communications with" and made "assurances to" Specialty. (FAC ¶ 169.) Specialty further alleges that "[b]ased upon the custom in the industry, the Specialty Pharmacy had the reasonable expectation that it would be paid the claims subject to the limitations of the plan." (¶ 170.)

Here, the payment of one claim, and perhaps the "issuance" of the first preapproval, might constitute conduct, as opposed to expressed terms, supportive of an implied contract claim. United's customary conduct in the industry might also support the claim. Again, however, Specialty's claim depends, at least in part, on the alleged "authorization" contained in the preapprovals, which, as discussed above, repeatedly refer to Patient A's plan. Indeed, Specialty does not allege or argue that its implied contract claim survives without regard to the preapprovals or Patient A's plan.

Moreover, Specialty specifically pleads that the reasonableness of its expectations is "subject to the limitations of the plan." (*Id.*) Again, this reference to Patient A's plan is not merely for "background purposes." In *Cmty. Hosp. of Monterey Peninsula v. Aetna Life Ins. Co.*, Case No. 19-cv-00328-BLF, 2020 WL 7389010, at *7 (N.D. Cal. June 26,

2020) ("*Aetna*"), for example, the provider alleged, as Specialty does here, that: (1) the third party patient was covered by an ERISA plan at the time of treatment; (2) the provider billed the insurer pursuant to the patient's plan; (3) the insurer partially paid those bills pursuant to the plan; and (4) the provider availed itself of the administrative remedies in the plan. The court found the provider's implied contract claim was preempted because the court would be necessarily required to examine the provisions of the third party patient's plan, and because the plan was essential for the claim's survival. Based on Specialty's allegations supporting its implied contract claim, it is not clear how this court could avoid examining the terms of Patient A's plan, or how the claim could survive without the plan. *See also Sharp Mem'l Hosp. v. Regence BlueCross BlueShield of Utah*, Case No.: 16cv2493 JM (RNB), 2018 WL 3993359, at *8 (S.D. Cal. Aug. 21, 2018) (finding that determining whether insurer breached an implied-in-fact contract with a provider would require the jury to evaluate exclusions in the patient's ERISA plan, which would likely mean the claim is preempted). Accordingly, Specialty's breach of implied contract claim is preempted.

**c. Promissory Estoppel**

"The elements of promissory estoppel are (1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." *Bushell v. JPMorgan Chase Bank, N.A.*, 220 Cal. App. 4th 915, 929 (2013). "Promissory estoppel applies whenever a promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance would result in an injustice if the promise were not enforced." *Advanced Choices, Inc. v. State Dep't of Health Servs.*, 182 Cal. App. 4th 1661, 1671-72 (2010). "A cause of action for promissory estoppel is 'basically the same as contract actions, but only missing the consideration element.'" *Yari*, 161 Cal. App. 4th at 182 (internal citations omitted).

In support of its promissory estoppel claim, Specialty again alleges United made clear and unambiguous promises to Specialty "through the issuance" of the preapprovals.

(FAC ¶ 152.) Specialty also alleges United "made numerous express and implied promises and assurances . . . . relating to payment of the [c]laims." (¶ 154.) Again, however, Specialty does not identify anything in the preapprovals, or anything about the "issuance" of the preapprovals, that constitutes a clear and unambiguous promise to pay. *See Cal. Surgery Ctr., Inc. v. UnitedHealthcare, Inc.*, Case No. CV 19-02309 DDP (AFMx), 2020 WL 3869715, at *5 (C.D. Cal. July 9, 2020) (equitable estoppel claim not preempted where the providers alleged that United "specifically stated that it would pay up to 80% of its in-network allowed amount and that it would honor an assignment of benefits and pay plaintiffs directly" and where United was alleged to have previously paid).

Specialty also does not specify any promises or assurances that were allegedly made that could function independently of the preapprovals or Patient A's plan. Rather, Specialty merely alleges that United made promises "relating" to payment. Absent Patient A's plan, however, the alleged "promises" made by United "neither could nor would have been made," and United would have had no reason to issue preapprovals or allegedly make numerous promises relating to payment of the "claims." *See Cal. Spine & Neurosurgery Inst. v. JP Morgan Chase & Co.*, Case No. 19-cv-03552-PJH, 2019 WL 7050113, at *4 (N.D. Cal. Dec. 23, 2019) (applying same reasoning to find that claims for promissory estoppel and quantum meruit were preempted). Accordingly, because Specialty's promissory estoppel claim, as pled, is dependent on the preapprovals, the claim is preempted for the same reasons discussed above.

**d. Unjust Enrichment/Quasi-Contract**

"When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The elements of an unjust enrichment claim are "receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000). "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched."

*Otworth v. S. Pac. Trans. Co.*, 212 Cal. Rptr. 743, 748 (Cal. Ct. App. 1985); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) ("A plaintiff may not . . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter.").

Here, Specialty alleges that United received a benefit when Specialty dispensed medication to Patient A. (FAC ¶¶ 148-49.) Specialty alleges that "United had a contractual obligation to the Patient to reimburse it or any healthcare provider for providing the medication." (¶ 150.) Specialty also alleges "it would be fundamentally unfair for [United] to avoid paying the claims, especially given that it issued the preapprovals to the Specialty Pharmacy and made additional representations and assurances to the Specialty Pharmacy." (*Id*.) Therefore, in determining whether United received a benefit, the terms of Patient A's plan would need to be consulted.[14] The terms of the plan, as referenced in the preapprovals, would also likely need to be consulted in evaluating unjustness given that Specialty relies on the preapprovals to demonstrate unjustness. Accordingly, Specialty's claim for unjust enrichment/quasi-contract, as currently pled, is preempted.

**e. Quantum Meruit**

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). "To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.'" *Port Med. Wellness, Inc. v. Conn. Gen. Life Ins. Co.*, 24 Cal. App. 5th 153, 180 (2018) (citation omitted). "[I]n order to recover under a quantum meruit theory, a plaintiff must

[14] As part of its claim based on quantum meruit, Specialty alleges the services it provided benefited United "by dispensing of its contractual obligation to the patient." (FAC ¶ 166.)

establish both that he or she was acting pursuant to either an express or implied request for such services from the defendant and that the services rendered were intended to and did benefit the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002). "[F]ederal and state courts have found that authorization of treatment and verification of benefits . . . . are insufficient to state a claim for quantum meruit." *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, Case No. SA CV 19-00243-DOC-DFM, 2020 WL 2121372, at *7 (C.D. Cal. May 4, 2020) (citations omitted).

Specialty alleges it provided the medication "based upon the request of United." (FAC ¶ 166.) Specialty does not specify, however, when, where, or how the request was allegedly made. *See ABC Services*, 2020 WL 2121372, at *7 (dismissing quantum meruit claim because the plaintiff did not allege that the insurer requested that the provider treat any of the patients, as opposed to merely authorizing treatment and verifying benefits); *Sharp*, 2018 WL 3993359, at *9 (faulting the provider for failing to expand on how an insurer requested that provider perform service for the insurer's benefit, and noting that in the health insurance context, the patient first requests medical service, then the provider seeks authorization from the insurer to provide treatment); *see also Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. 18-cv-01283-RSWL-KS, 2018 WL 6430119, at *3 (C.D. Cal. July 11, 2018) ("Where . . . . the patient initiates the request for treatment and the hospital contacts the insurer for authorization, the insurer makes no express or implied request.").

Moreover, Specialty alleges its dispensation of the medication was "approved in the preapprovals," (FAC ¶ 163), and the services it provided benefited United "by dispensing of its contractual obligation to the Patient," (¶ 166). Again, this reference is not mere "background" because Specialty will have to show that United had a contractual obligation to Patient A, and that the obligation was satisfied. Accordingly, Specialty's quantum merit claim is preempted because it depends on the preapprovals and Patient A's plan. *See also Summit*, 2020 WL 5436655, at *7 (granting motion to dismiss quantum meruit claim because the complaint did not raise the inference that "United itself" requested that the

provider treat the patients); *Aetna*, 2020 WL 7389010, at *7 (quantum merit claim preempted where the insurer's alleged conduct toward the provider, i.e. an authorization, partial denial of benefits, and partial payment, were "intertwined" and "arose" from the plan); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1072 (S.D. Cal. 2016) (quantum meruit claims preempted where the provider's claims were based on the allegation that insurer wrongfully denied it adequate reimbursement).

**f. Intentional Interference**

A plaintiff alleging a claim for relief for the tort of intentional interference with prospective economic relations or advantage must prove "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional wrongful acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (alterations omitted) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Specialty alleges: (1) it had an economic relationship with Patient A that carried the probability of future economic benefit for Specialty; (2) United was aware of Specialty's relationship with Patient A; (3) United intended to disrupt the relationship in order to steer Patient A to another pharmacy that would provide the medication at a lower price; (4) Specialty's relationship with Patient A was terminated; and (5) Specialty lost past and future profits from dispensing medication to Patient A. (FAC ¶¶ 176-81.) Specialty also alleges, however, that United's conduct in refusing to reimburse it for the medication was an independently wrongful act because "United had a contractual duty to the Patient to provide the patient with medical benefits, including paying for the patient to obtain the medication." (¶ 182.) Specialty does not allege or argue that its intentional interference claim survives without pleading an independently wrongful act. Moreover, Specialty does

not allege another wrongful act besides the alleged breach of the terms in Patient A's plan. Perhaps the existence of Patient A's plan, or breach of its terms, is a more attenuated issue in the resolution of Specialty's tort claim, as compared to contract-based claims. Nonetheless, as Specialty's intentional interference claim is currently pled, it is not reasonable to infer that Specialty could prove its alleged wrongful act without consulting the terms of Patient A's plan. Further, it is not reasonable to infer that United would concede it violated the terms of Patient A's plan in defending against the claim. Accordingly, Specialty's intentional interference with prospective economic relations or advantage claim is preempted because it is premised, in a substantive way, on the preapprovals and Patient A's plan.

**2. Specialty's Arguments**

Specialty argues that "the Ninth Circuit has held that state law claims are not preempted when, like here, an ERISA plan is only referenced in the [FAC] for background purposes and in no way are the providers' claims dependent upon the plan." (Doc. No. 20 at 10.) As discussed above, the repeated direct and indirect references to Patient A's plan in the FAC cannot reasonably be read to serve mere "background purposes." Furthermore, the cases cited by Specialty in support of its argument are not availing.

**i. The Meadows**

In *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1107 (9th Cir. 2009), the court held that where a provider was suing not as an assignee, but as a "third party provider," its claims for negligent misrepresentation, estoppel, and breach of contract were not preempted because they were "independent state law claims." In *The Meadows*, however, the provider was told that a husband and wife were covered, when in fact they were not because the husband had terminated his employment prior to treatment. *Id*. at 1109. In concluding the claims were independent of the husband's plan, the court reasoned "neither [the provider] nor the [husband and wife] had any existing ties to the ERISA plan" when they sought treatment. *Id.* The court also distinguished another case, in which the

Supreme Court found that a claim for wrongful termination was not preempted,[15] because "the claims [in *The Meadows*] arose because there was no plan coverage for the [husband and wife] which was the very fact misrepresented by [the plan], to the detriment of [the provider]." *Id.* at 1010. Therefore, *The Meadows* clearly relied, at least in part, on the *absence* of an ERISA plan in place at the time the provider sought to verify coverage.[16] Here, Specialty does not allege that Patient A's plan was not in place at the time it sought to verify coverage. To the contrary, and as discussed above, Specialty's claims rely heavily, if not entirely, on the allegation that a plan was in place when it received the preapprovals and other communications from United.

**ii. Cedars-Sinai**

In *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 978 (9th Cir. 2007), the court held, in summary fashion, that claims for breach of contract and negligent misrepresentation were not precluded by federal law because, under *The*

---

[15] The case was *Ingersoll-Rand*, in which the Supreme Court held it had "no difficulty in concluding" that a claim for wrongful termination related to an ERISA plan where the plaintiff alleged his employer wrongfully terminated him to avoid paying his pension benefits. 498 U.S. at 140. The existence of a pension plan was specifically included as an element of the state cause of action. *Id.* In *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010), however, the Ninth Circuit clarified that it is not necessary that the existence of an employee benefit plan be specifically included as an express element of a state common law claim in order for the claim to be preempted. In *Wise*, an employee was denied long-term disability benefits by her employer and her employee welfare plan. *Id.* at 1184. She sought damages from her employer based on promises the employer allegedly made concerning her benefits while recruiting and hiring her. *Id.* Relying on the "critical factor" language in *Ingersoll-Rand*, the court found the claims against her employer were preempted because: (1) the complaint "necessarily reference[d] an ERISA plan;" (2) "[t]he state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that [the plaintiff] suffered damages: the loss of insurance benefits;" and (3) the plaintiff "must allege the existence of an ERISA plan to state her claims under [state] law." *Id.* at 1191.

[16] Specialty also does not address *The Meadows'* rationale for distinguishing *Ingersoll-Rand*.

*Meadows*, the provider was "suing as a third-party claiming damages, and not as an assignee of rights to benefits." In *Cedars-Sinai*, however, the plan argued (1) it was not required to pay the contracted rate for federal employees because of the patient's death, and (2) it need not pay the Medicare rate because the deceased patient was no longer an employee. *Id.* Therefore, the plan in *Cedars-Sinai* essentially argued the same thing as the plan in *The Meadows* did, i.e. that it was not required to pay because the beneficiary was no longer an employee and was not covered by the employer-based health plan. Here, again, Specialty does not contend that United's refusal to pay is based on the absence of a plan due to Patient A's unemployment or death. Rather, Specialty contends that United's refusal is based on the terms of the plan in place at the time Specialty dispensed medication to him.[17]

**iii. Blue Cross**

In *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999), the court found, *inter alia*, that "[w]here the meaning of a term in the plan is not subject to dispute, the bare fact that the plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision." Accordingly, Specialty also argues that "just because the [FAC] references the plan for background does not mean the claims are preempted, as the meaning of the terms of the plan are not in dispute and the Specialty Pharmacy is not seeking to enforce terms of the plan." (Doc. No. 20 at 8; *see also id.* at 16 (arguing that "the mere fact that a plan may need to be consulted in the course of state-law litigation or that it is referenced in the complaint does not require preemption").)

Here, however, the terms in Patient A's plan are "subject to dispute." Although Specialty argues it is "not claiming there was any breach of any ERISA plan document,"

---

[17] Neither *The Meadows* nor *Cedars-Sinai* held, as Specialty suggests, that where an individual beneficiary does not assign his or her claims to their provider, the provider's claims against the beneficiary's plan are never preempted by ERISA.

(Doc. No. 25 at 6), it is not reasonable to infer that Specialty and United entirely agree, or will entirely agree, as to the meaning of the terms in Patient A's plan, or lack thereof, regarding reimbursement for self-infused medication. It is also not reasonable to infer that United's alleged reason for the refusal, i.e. there are no medical records that Patient A actually self-infused the medication, has no connection to the terms of Patient A's plan. Accordingly, and as discussed above, the instant case is not one in which there is a "bare fact" that Patient's A's plan "may be consulted." Rather, the plan's terms are, a key part, if not the core part, of Specialty's claims.

Additionally, the dispute in *Blue Cross* was over the plan's ability to adjust a fee schedule in express written "provider agreements" between the plan and the providers. The court specifically relied on this fact to distinguish the case from another case in which the assignee-provider had no such agreement. *See* 187 F.3d at 1051 (citing *Misic v. Building Serv. Emp. Health & Welfare Trust*, 789 F.2d 1374 (9th Cir. 1986)). In other words, the *Blue Cross* court differentiated claims brought by an assignee-provider for reimbursement under a *patient's* agreement with an insurer from those brought by a provider under the *provider's* agreement with the insurer. The court reasoned that claims related to benefits under a patient's agreement with a plan can only be brought by a patient or an assignee-provider, whereas claims related to changes in fee schedules under a provider's agreement with an insurer can only be brought by the provider. *Id.* Here, however, Specialty concedes it does not have a provider agreement with United, (*see* FAC ¶ 5), and its claims are not based on a breach of a provision regarding changes to a fee schedule in a provider agreement.

Also, the finding in *Blue Cross* that the "bare fact" that a plan "may be consulted" does not warrant preemption was made when analyzing a preemption argument under ERISA's civil enforcement provision under 29 U.S.C. § 1132(a), not its express preemption clause under 29 U.S.C. § 1144(a), which is the provision at issue here. *See Blue Cross*, 187 F.3d at 1051. Additionally, the court made this finding in response to the insurer's "overriding" argument that the providers' claims were preempted simply by

virtue of the fact that their right to receive reimbursement depended on assignments of the rights from their patients, only some of which were beneficiaries of ERISA-covered plans. *Id.* at 1050. The court stated, "we find no basis to conclude that the mere fact of assignment converts the [p]roviders' claims into claims to recover benefits under the terms of an ERISA plan." *Id.* at 1052. The court found the claims arose from the terms of the provider agreements "and could not be asserted by their patient-assignors." *Id.* at 1050. Here, United does not argue that Specialty's claims are preempted based on an assignment of rights, and Specialty specifically disclaims proceeding as an assignee. Also, it does not appear as if Patient A would be unable to bring the same or similar claims himself.

Finally, although the court in *Blue Cross* found the providers' claims were not preempted under ERISA's express preemption clause, it did so in response to the plan's argument the claims were preempted because allowing the claims to proceed would (1) impose increased costs on the plan, and (2) encroach on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee. *Id.* at 1052. Indeed, the "economic effect" and "relationship" tests have been recognized as grounds or potential grounds for finding that a law has a "connection with" ERISA and is therefore preempted. *See, e.g.*, *N.Y. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (recognizing potential economic effect test); *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521-22 (9th Cir. 1993) (recognizing relationship test). Here, United's preemption argument is not based on the "connection with" standard. (*See* Doc. No. 24 at 2 n.1.) Additionally, United's preemption argument is not based on the economic effects of the claims or interference of Specialty's claims with ERISA-regulated relationships. The only party to raise those issues is Specialty. There is no indication, however, and Specialty cites no authority suggesting, that these "connected

///

///

///

///

with" tests are designed to be used defensively to show that a state law is not preempted, as opposed to alternative methods for finding that a state claim is preempted.[18]

**iv. Other Cases**

Specialty also cites *Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 753 (10th Cir. 1991) in which a plan was alleged to have initially communicated to a provider that a patient was covered, but then denied payment based on the patient's preexisting condition. The provider sued the plan for promissory estoppel, quantum meruit, and claims as a third-party beneficiary. *Id.* The court found the claims did not relate to the patient's plan because denial of payment to the provider was a "mere consequence" of its denial of coverage to the patient. *Id.* at 754. The court relied on the fact the provider's claims did not claim any rights under the plan, and did not claim any breach of the plan contract. *Id.* The court found the references to the preexisting condition in the plan was "background factual explanation" of the plan's decision to deny payment. *Id.* Here, however, Specialty brings claims for breach of contract. (FAC ¶¶ 136-46.) Although Specialty attempts to couch these claims, as well as its other claims, as arising not from the terms of Patient's A plan, but rather from United's preapprovals and "other communications," as discussed above, Specialty's claims repeatedly refer to Patient A's plans for purposes beyond mere "background factual explanation."[19]

---

[18] The *Blue Cross* court also rejected the plan's argument the claims were "intertwined" with patients' benefits, reasoning that "because there is no claim that beneficiaries have not received their full benefits under the plans, or any argument that interpretation of the provider agreements will somehow work a change in the benefits to which beneficiaries will be entitled under ERISA-covered plans, the [p]roviders' claims do not encroach on the relationship between beneficiary and plan." *Blue Cross*, 187 F.3d at 1053-54. Here, whether Patient A received his full benefits under his health plan is not as far removed an issue as it was in *Blue Cross*. In fact, it appears to be a central issue.

[19] Specialty also makes no attempt to reconcile this non-binding case with the Supreme Court's holding in *Ingersoll-Rand*, 498 U.S. 133, and the Ninth Circuit's holding in *Wise*, 600 F.3d 1180.

Finally, Specialty cites *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474 (2020), but does not explain why it affects the outcome of this case. In *Rutledge*, the Supreme Court held that "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 480. The Court found an Arkansas statute requiring pharmacy benefit managers to reimburse pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler was not preempted. *Id.* at 474. Given that the instant case does not involve a state regulation, it is not clear how *Rutledge* applies. Moreover, as noted by United, the Court in *Rutledge* cited its previous decision in *Ingersoll-Rand*, *id.* at 480, but the Court did not disturb its prior holding relating to the preemption of state law claims.

## IV. CONCLUSION

For the foregoing reasons, Specialty's claims are preempted by ERISA's express preemption clause, 29 U.S.C. § 1144(a), because they make reference to, and are related to, Patient A's plan. United's Motion to Dismiss on preemption grounds is **GRANTED**. The court declines to decide whether Specialty's breach of implied and express contract claims, as well as its claim based on promissory estoppel, must also be dismissed for failure to state a claim under Rule 12(b)(6) irrespective of United's preemption argument.

Specialty's request for leave to amend, (Doc. No. 20 at 21), is **GRANTED**. *See* Fed. R. Civ. P. 15(a) (leave to amend "should be freely granted when justice so requires"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[T]he underlying purpose of Rule 15 . . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.") (internal quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (requests for leave should be granted with "extreme liberality"). Specialty shall file its second amended complaint, should it choose to file one, ***within 14 days*** of the filing of this order. United's response to the operative complaint is due ***within 14 days*** after the expiration of Specialty's deadline to file a second amended complaint. *See* Fed. R. Civ. P. 15(a)(3). Should Specialty file a second amended complaint, and should

United choose to file another motion to dismiss, the parties ***shall*** address any ERISA preemption issue on a claim-by-claim basis with supporting citations and analysis of all applicable cases.

IT IS SO ORDERED.

Dated: 4/2/21

Hon. Jeffrey T. Miller
United States District Judge